Argued and submitted October 21, 1992, affirmed January 19, 1994

## MILWAUKIE CONVALESCENT AND RESIDENTIAL CARE CENTER,
an Oregon corporation,
*Petitioner,*

*v.*

The Filings of the
## NATIONAL COUNCIL ON COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(90-02-032; CA A72121)

867 P2d 513

Donald L. Dickerson argued the cause and filed the brief for petitioner.

Peter A. Ozanne waived appearance for respondent National Council on Compensation Insurance.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondent SAIF Corporation. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge, Deits, Judge, and Durham, Judge pro tempore.

RICHARDSON, C. J.

## RICHARDSON, C. J.

Employer is an Oregon corporation that operates an adult nursing home facility. It seeks review of an order of the Department of Insurance and Finance (DIF) that upheld the results of a premium audit by its workers' compensation insurer, SAIF. We affirm.

SAIF conducted an audit of employer's payroll for the periods July, 1987, through June, 1988, and July, 1988, through June, 1989. SAIF assessed additional premiums on the basis of its determination that two persons hired as subcontractors were employees and not independent contractors. SAIF also concluded that some employees should be placed into a different job classification for premium calculation.

Employer operates a nursing home and most of its employees are engaged in that activity. However, during the periods in dispute, employer built an addition to its facility. It acted as the general contractor for the construction project and hired various subcontractors to do the construction work. Employer's secretary-treasurer, Eivers, who was also a full-time employee, acted as the supervisor of the construction. In its findings, DIF described Eiver's activities, in relation to the project:

"In addition to his normal duties, during the construction Eivers also solicited bids from construction firms and selected those who would receive the various construction jobs. Eivers did not personally engage in any construction work. He visited the construction site daily, speaking with the architect and the workers. Eivers had copies of detailed plans that he received from the architect and would often discuss these plans with the architect, city inspectors, and the workers. Eivers assured that the workers were at the work site. He assured that the workers did what they were supposed to do. He assured that materials were delivered to the job site. He checked daily on the progress that the workers made toward completion of the job. Eivers ordered, and [employer] paid for lumber and roofing material that the workers indicated were needed for the project.

"One of the firms performing framing construction for [employer] was Robinette. Robinette had employees working on [employer's] construction project. [Employer] did not

require proof of workers' compensation coverage from Robinette. Robinette had no workers' compensation insurance coverage for its employees. [Employer] did not check with the Builders' Board to determine whether Robinette was registered as a builder with the State of Oregon. [Employer] and Robinette had a written contract describing their relationship. That agreement indicates that [employer] is the 'Contractor' and Robinette is the 'Subcontractor'.

"McKinley also worked on [employer's] construction site. [Employer] did not require proof of workers' compensation coverage for McKinley, nor did [employer] inquire whether McKinley maintained such coverage. McKinley had no such coverage. [Employer] did not check with the Builders' Board to determine whether McKinley was registered as a builder with the State of Oregon. McKinley was not so registered. [Employer] had no written contract with McKinley for his services."

■ DIF concluded that the two subcontractors were subject to employer's direction and control and that there was insufficient evidence to establish that they were independent contractors and not employees. Employer argues that there is no evidence that the two contractors were subject to its control and that the "nature of their work" is as independent contractors, as opposed to covered employees.

■ An employer who challenges DIF's orders made under ORS 737.505 has the burden of proving that premium determinations are wrong. *Salem Decorating v. Natl. Council on Comp. Ins.*, 116 Or App 166, 840 P2d 739 (1992), *rev den* 315 Or 643 (1993). Employer's argument is essentially that the evidence presented supports a conclusion that the two subcontractors were independent businesses. Employer, however, presented very little evidence about the nature of the two men's work or business and about the degree of control actually exercised by employers. The findings about control are supported by substantial evidence and there is a reasoned conclusion by DIF from the findings. We agree with DIF that employer did not meet its burden of establishing that the subcontractors were not covered employees.

■ Employer next argues that two of its employees in the nursing home operation were incorrectly reclassified to job classes with higher premiums. Employer contends that both of these employees should be classified as clerical office

workers rather than convalescent home workers, a higher premium class. To be placed in the lower rate classification, the employees must perform clerical duties while in areas physically separated from other operations of the nursing home. The payroll of clerical employees, who perform other functions allocated to the higher rate class, may be prorated to both classifications for premium calculations. However, OAR 836-42-060(2) requires that employer keep accurate, verifiable records of the employee's work and its location in the facility. If such records are not kept, the employee's entire payroll is allocated to the higher rate class.

DIF found that one administrative employee, who was classified as a clerical worker, actually performed non-clerical functions such as aiding patients, meeting with residents and their families and showing people around the facility. Because employer's records did not accurately allocate this employee's duties, his entire payroll was placed in the higher classification. DIF also found that a bookkeeper for employer performed billing, accounts receivable and accounts payable functions in the computer room. DIF determined that the computer room was not a separate area as required under the rules, and concluded that the bookkeeper's payroll therefore could not be classified as exclusively clerical.

Employer argues that the administrative employee performed mostly clerical duties and that any of the other things he did were incidental. However, there is evidence to support DIF's findings. If that employee in fact worked outside a separate physical space or did work in two classifications, employer did not provide verifiable records from which a proration of the payroll could be made. We agree with DIF that employer did not meet its burden to controvert DIF's findings.

■ Employer argues that the bookkeeper performed clerical functions exclusively. DIF, however, found that she was not physically separated from the other nursing home operations. Employer offered no evidence about the location of her work station or even about the physical location of the "computer room." Again, employer has not met its burden to establish that the classification was incorrect.

Employer argues that the payroll of several other employees should have been prorated to both clerical and nonclerical classifications for premium calculations. DIF found that employer's records did not adequately specify the type and location of work performed by those employees to prorate the payroll. Substantial evidence supports DIF's findings.

Employer finally argues that, even if it failed to keep appropriate records, SAIF is estopped from billing it for the higher premium because SAIF approved its payroll reporting procedures. Although DIF did not specifically analyze employer's estoppel argument, we interpret the order as rejecting the contention. Even viewing the evidence in the light most favorable to employer, there is no factual basis for applying equitable estoppel to prevent SAIF from billing at the higher premium rate.

Affirmed.